IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DEBRA GARRICK,**                                          Civil No. 10-648-AC

             Plaintiff

         v.                                          **FINDINGS AND**
                                                     **RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

             Defendant.

ACOSTA, Magistrate Judge:

Plaintiff Debra Garrick ("Garrick") seeks judicial review of the Social Security

Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This

court has jurisdiction under 42 U.S.C. §§ 405(g). The Commissioner's decision should be affirmed.

///

///

///

///

1 - FINDINGS AND RECOMMENDATION

**BACKGROUND**

Born in 1957, Garrick applied for DIB[1] on July 13, 2004. Tr. 100.[2] Garrick alleged

disability since December 24, 2001 (Tr. 111), due to "back and neck problems, depression, gastro-

intestinal problems, acid reflux, memory problems, chronic sinus infections, allergies, [and] chronic

bronchitis. Tr. 110. The Commissioner denied these applications initially and upon reconsideration,

and Garrick received hearings before an Administrative Law Judge ("ALJ") on August 8, 2007, and

on October 1, 15, and 31, 2007. Tr. 694-849. The ALJ subsequently found Garrick not disabled on

November 30, 2007. Tr. 16-27. The Appeals Council declined review of the matter on May 14,

2010 (Tr. 5-8), and Garrick now appeals to this court.

**DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If

she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two,

the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509;

404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe

impairment, she is not disabled. *Id.*

---

[1]The ALJ's decision and both parties indicate that Garrick also applied for SSI. That application is not in the record before the court.

[2]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 26, 2010 (Docket #12).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566; 416.920(g); 416.966.

3 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ found Garrick's back pain, asthma, fibromyalgia, and irritable bowel syndrome "severe" at step two in the sequential proceedings (Tr. 18) but found that these impairments did not meet or equal an impairment "listed" in the Commissioner's regulations at step three. Tr. 20. The ALJ found Garrick retained the RFC to perform a full range of light work, and therefore found her able to perform her past work as a waitress, retail sales worker, and receptionist at step four in the sequential proceedings. Tr. 26. The ALJ consequently found Garrick not disabled. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see* also *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193.

4 - FINDINGS AND RECOMMENDATION

## ANALYSIS

Garrick asserts that the ALJ improperly addressed the opinions of examining psychologist James Bryan, Ph.D., and treating physician Kimberly Kisor, M.D., as well as testimony submitted by a lay witness. She subsequently asserts that the ALJ erroneously assessed her RFC under the Commissioner's administrative ruling SSR 96-8p, and contends that the ALJ erroneously found that she could perform her past relevant work at step four in the sequential proceedings.

## I.    Medical Source Statements

Garrick challenges the ALJ's evaluation of examining psychologist Dr. Bryan, and additionally cites the opinions of treating physician Dr. Kisor and social worker Heather Mulkerns, LCSW.

### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

///

5 - FINDINGS AND RECOMMENDATION

### B.    Analysis

#### 1.    Examining Psychologist Dr. Bryan

Dr. Bryan evaluated Garrick for vocational rehabilitation services on December 23, 2004. Tr. 438-452.  Dr. Bryan conducted a clinical examination and numerous psychological tests, and diagnosed somatization disorder, moderate recurrent major depressive disorder, and a personality disorder without specified onset.  Tr. 448.  Dr. Bryan's evaluation and accompanying report made no work-related limitations, but suggested that Garrick would perform better in an environment that utilized her "strong capabilities" in language expression, abstract reasoning, and organization.  *Id.* He also suggested that Garrick pursue mental health counseling.  *Id.*

Dr. Bryan later completed a form submitted by Garrick's attorney on March 3, 2005.  Tr. 427-33.  Here he noted that he evaluated Garrick once, and repeated his diagnostic impressions.  Tr. 427.  In response to a prepared "check-off" form, Dr. Bryan endorsed suspicion, hostility, and paranoia as symptoms, as well as "a history of multiple physical symptoms of several years duration beginning before age 30, that have caused and [sic] individual to take medicine frequently, see a physician often, and alter life patterns significantly."  Tr. 428.  Dr. Bryan stated that Garrick's impairment was expected to last more than twelve months, and endorsed that Garrick would experience difficulty with stamina, pain, fatigue, and pace in performing full-time work at a light exertional level.  Tr. 430.  He also endorsed that Garrick would be absent from work "about four times a month," and that she would be unable to meet competitive standards in concentration, persistence, and pace.  Tr. 431.  Dr. Bryan indicated no limitations in many other work functions, and indicated that Garrick was limited in, but not precluded from, working with others or completing

a workday without interruption from psychologically-based symptoms. *Id.* He assessed "marked" difficulties in maintaining social functioning. Tr. 432.

The ALJ gave this opinion "little weight due to its inconsistencies." Tr. 24. Here the ALJ noted Dr. Bryan's report that Garrick was not "self medicating," and found this inconsistent with Garrick's daily marijuana use to "calm down." *Id.* The ALJ also noted Dr. Bryan's report that Garrick suffered episodes of "decompensation," and found this contradicted by Garrick's testimony that her suicidal gestures were "symbolic" in the course of custody disputes. *Id.*

Because examining psychologist Joe Wood, Psy. D., assessed no diagnostic impressions following a November 1, 2004, evaluation (Tr. 371), Dr. Bryan's opinion is contradicted, and the ALJ must offer only specific and legitimate reasons for rejecting his opinion. *Lester*, 81 F.3d at 830. The ALJ's finding that Dr. Bryan's opinion was contradicted by Garrick's own testimony regarding her marijuana use and July 2000 suicidal gesture is furthermore based upon the record. Tr. 709-10, 441. The record furthermore shows that Dr. Bryan's own December 23, 2004, report assessed no work-related limitations (Tr. 438-52), and thus did not reflect the limitations assessed on the form Dr. Bryan submitted to Garrick's counsel in March 2005. The ALJ may reject a medical opinion that is brief, conclusory, and unsupported by clinical notes or findings. *Bayliss*, 427 F.3d at 1216. For all of these reasons, the ALJ's rejection of Dr. Bryan's opinion was based upon sufficiently specific reasoning and substantial evidence.

### 2.    Other Medical Source Opinions

Garrick also states that treating physician Dr. Kisor's opinion "*must* also be credited as true as the ALJ did not cite any reasons whatsoever for rejecting her opinions." Pl.'s Opening Br. 14

(emphasis original).  Garrick provides no further explanation or discussion regarding this assertion, and does not point the court towards evidence supporting this assertion.  The Commissioner responds that Garrick's factual recitation of the record incorrectly identified the opinion of social worker Heather Mulkerns, LCSW, to Dr. Kisor.  Def.'s Br. 6.  Garrick concedes this error and subsequently asserts that Mulkerns' opinion supports Dr. Bryan's opinion.  Pl.'s Reply Br. 5.

The court will not consider alleged error pertaining to Dr. Kisor's opinion because Garrick neither explains nor pursues this argument, and concedes that she did not intend reference to Dr. Kisor's opinion.  Pl.'s Reply Br. 5.

Garrick instead asserts that Mulkerns' opinion is consistent with Dr. Bryan's opinion.  *Id.* The record shows that Mulkerns' indicated July 29, 2005, opinion noted Garrick's reports of social isolation and multiple stressors.  Tr. 581.  Mulkern concluded:

> [Garrick]'s ability to problem solve is fluctuating. [Garrick] tends to have explosive anger and tends to alienate others.  [Garrick]'s narrative of her life has themes of others intentionally hurting her by her estimation. [Garrick] is demonstrating [symptoms] of personality disorder such as chronic instability of relationships, unstable self-image, impulsivity, self-harm (eating foods she knows will make her sick), intense anger, and emptiness. [Garrick] was able to participate in problem solving during this session and was able to use acceptance to plan around her chronic pain cycles. Tr. 582.

This statement offers no diagnostic impressions and does not address work-related limitations. Further, it does not specifically address Dr. Bryan's March 2005 conclusions that Garrick now seeks to support.  Garrick's citation to social worker Mulkern's opinion therefore fails to establish that the ALJ erroneously evaluated either Mulkern's opinion or Dr. Bryan's opinion.

In summary, Garrick fails to show that the ALJ improperly evaluated the medical evidence.

The ALJ's findings regarding Dr. Bryan, Dr. Kisor, and social worker Mulkern should be affirmed.

## II.    Lay Testimony

Garrick asserts that the ALJ improperly evaluated testimony submitted by her daughter, Phedra Shutts.  Pl.'s Opening Br. 15.

### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony.    20 C.F.R. §§ 404.1513(d); 404.1545(d); 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.  The ALJ may also reject lay testimony predicated upon the testimony of a claimant found not credible. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### B.    Analysis

Shutts submitted a third-party report to the record on August 8, 2007 (Tr. 145-52), and testified at length at Garrick's October 15, 2007, hearing.  Tr. 770-97.

#### 1.    August 8, 2007, "Witness Statement"

On August 8, 2007, Shutts completed a form entitled "Witness Statement," which Garrick's attorney submitted to the record.  Tr. 145-52.  This form asked for a 0-to-10 scale rating regarding Garrick's "functionality," "activities of daily living," "social functioning," "concentration,

persistence, or pace," and "episodes of decompensation." Tr. 145-48. Shutts endorsed "marked" limitations at each question (Tr. 145-48), and wrote that Garrick's daily activities have been "hindered due to chronic pain issues," and that Garrick has "good and bad days" regarding her "digestive issues." Tr. 146. Shutts also wrote that Garrick is irritable, "will isolate" in her room, experiences daily forgetfulness, and on one occasion became extremely angry regarding baby food. Tr. 146-47. Finally, Shutts marked "yes" in response to a series of questions regarding the Commissioner's listings at step three in the Commissioner's sequential disability analysis. Tr. 159. These endorsements were accompanied by short statements explaining that Garrick experiences "decompensation," receives "ADA accommodations," has a disability parking permit, throws temper tantrums, and "would have a hard time living alone." Tr. 150-52.

The ALJ discussed this form, noting Shutts' endorsement of "marked" impairments, and her opinion that Garrick met the Commissioner's listings at step three in the sequential proceedings. Tr. 25. The ALJ rejected this testimony because Shutts is not an acceptable medical source. *Id.* Here the ALJ found that Shutts offered no explanation for her statement that Garrick had a "documented disability," and found that Shutts did not explain any accommodation Garrick received for such a disability. *Id.*

The record reflects the ALJ's findings. Although Shutts used vocabulary familiar to the Commissioner's disability analysis, such as "marked," "decompensation," and "disability," her comments do not reflect comprehension of these terms and do not describe observed limitations. Lay witness testimony is valuable to the extent that it reflects lay witness observations. *Dodrill*, 12 F.3d at 918-19. Here, the ALJ found that the limitations expressed in Shutts' August 8, 2007,

opinion were not based upon Shutts' own observations.  The ALJ's rejection of Shutts' August 8, 2007, should therefore be affirmed.

### 2.    October 15, 2007, Hearing Testimony

Shutts testified for forty-five minutes at Garrick's October 14, 2007, hearing.  Tr. 770-97. Here she stated that Garrick has had "wobbly" footing since a 1996 motor vehicle accident, tires when climbing stairs, and lays in her room all day.  Tr. 771-72.  Garrick requires rest after walking two blocks (Tr. 773), and has pain and numbness in her hands.  Tr. 774. Garrick is also slow in performing household tasks, and "very irritable."  Tr. 774-75.  Though Garrick cares for Shutts' eighteen-month old son, she has "minimal" responsibilities.  Tr. 779.

Shutts described Garrick's "almost explosive" disposition (Tr. 780), and stated that Garrick has crying spells twice a month.  Tr. 784.  She also discussed Garrick's 2000 employment at Portland Music, and stated that Garrick was "exhausted" and "almost falling over" in the course of working. Tr. 783.  Garrick is tangential in conversation (Tr. 787), and gets lost driving to familiar places.  Tr. 783.

Shutts further testified that Garrick has "bowel and urinary problems," (Tr. 789) and experiences emotional outbursts that offend people.  Tr. 790.  Shutts repeated that Garrick must rest after walking two blocks, but can grocery shop for up to forty-five minutes or an hour.  Tr. 793. Finally, Shutts testified that Garrick attended Maryhurst University beginning in 2000 until one and one-half years prior to the October 15, 2007, hearing date.  Tr. 794.

The ALJ discussed Shutts's hearing testimony in some detail.  Tr. 25.  The ALJ cited Shutts' comments regarding Garrick's ability to walk no more than two blocks, slow pace amounting to

11 - FINDINGS AND RECOMMENDATION

"one-half" of normal pace, and incontinence.  Tr. 25.  The ALJ also cited Shutts' testimony regarding Garrick's Maryhurst University attendance.  *Id.*  The ALJ found this testimony contradicted by Garrick's testimony regarding her pace, and contradicted by Garrick's testimony that she completed work study employment while at Marylhurst.  *Id.*

The ALJ must cite a "germane" reason for rejecting lay testimony, *Nguyen*, 100 F.3d at 1467, and an ALJ may reject symptom testimony that is internally contradictory or contradicted by a claimant's activities of daily living.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing such contradictions for rejecting testimony).  Garrick testified that in performing tasks, she is "95-99 percent slower than I used to be," (Tr. 842), and that she performed work-study employment at Marylhurst after her December 24, 2001, alleged onset of disability.  Tr. 819-20.  The ALJ's finding that Shutts' testimony contradicted Garrick's testimony regarding both her limitations and her activity at Marylhurst is therefore based upon the record.  This reasoning should be affirmed.

In summary, the ALJ provided appropriate and sufficiently germane reasons for rejecting Shutts' testimony.  The ALJ's findings regarding her testimony should be affirmed.

## III.    Residual Functional Capacity and Step Four Findings

Garrick asserts that the ALJ failed to follow the Commissioner's administrative ruling regarding the opinions of Drs. Bryan, Kisor, and Wood, and Shutts' testimony.  Pl.'s Opening Br. 15-16 (citing SSR 96-8p).  She subsequently asserts that this alleged error undermines the ALJ's finding that she could perform her past relevant work at step four in the sequential proceedings.

### A.    SSR 96-8p

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI:

Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make narrative findings in construing a claimant's RFC. *Id.* at *2, 7. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

Garrick fails to establish reversible error regarding the opinions of Drs. Bryan, Kisor, and Wood, as discussed above. *Supra*, 6-8. The ALJ provided sufficient reasons for rejecting Shutts' testimony. *Supra*, 12. Garrick therefore fails to establish that the ALJ improperly assessed her RFC under the Commissioner's administrative ruling, and this evidence will not be discussed again. The ALJ's RFC analysis should be affirmed.

**B.    Step Four Findings**

The ALJ found that Garrick's RFC allowed her to perform her past relevant work at step four in the sequential proceedings. Tr. 26. Garrick asserts that this finding is based upon an erroneous RFC assessment, and that the ALJ was further required to perform a "functional analysis" of her past relevant work. Pl.'s Opening Br. 17.

At step four in the sequential proceedings, the ALJ determines if the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform such work she is not disabled and the sequential evaluation concludes. *Id.* In construing his step four findings, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v.*

*Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ may then compare the demands of a claimant's past relevant work with the claimant's RFC in determining whether the claimant may presently perform such work. SSR 82-62, "Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work" (*available at* 1982 WL 31386, at *3).

Here, the ALJ asked the vocational expert to evaluate the exertional demands relating to Garrick's past work as a waitress, retail sales clerk, and receptionist. Tr. 762. The vocational expert stated that the waitress and sales clerk position are classified as "light" work, and the receptionist position is "sedentary" work. *Id.* The ALJ incorporated this testimony into his step four finding, and subsequently found that, because Garrick could perform "light" work, she could perform her past relevant work in the indicated positions. Tr. 26.

Garrick now asserts that the ALJ's findings regarding her past relevant work lack sufficient detail under SSR 82-62. Pl.'s Opening Br. 17-18. The Commissioner's administrative ruling instructs that an ALJ should obtain information about from the claimant about her past relevant work, with additional instructions regarding a claimant's mental limitations. SSR 82-62 (available at 1982 WL 31386 at *3). Here, the record contains Garrick's reports of her past relevant work (Tr. 104, 111-12), and the vocational expert's testimony addressed this work. Tr. 762. Because Garrick does not establish any work-related limitations stemming from mental limitations, the ALJ was not required to further develop the demands of Garrick's past relevant work pertaining to such limitations. In summary, the ALJ's RFC analysis finding that Garrick could perform light work should be affirmed for the reasons above. The ALJ's subsequent finding that Garrick could perform the indicated positions should therefore be affirmed also. Consequently, the ALJ's finding that

Garrick was not disabled at step four in the sequential proceedings should be affirmed.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Garrick did not suffer from disability, and is not entitled to benefits under Title XVI of the Social Security Act, is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision should be AFFIRMED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due November 9, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of October, 2011.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge


15 - FINDINGS AND RECOMMENDATION